16627

PEACE *ET AL.* v. HARRIS *ET AL.*
(70 S. E. (2d) 860)

*Mr. E. P. Riley,* of Greenville, *for Appellants,* cites:

*Messrs. Wyche, Burgess & Wyche,* of Greenville, *for Respondents,* cite:

May 12, 1952.

STUKES, Justice.

Bony Hampton Peace of Greenville died testate in January 1934. He was the owner of eight hundred and thirty-nine shares (of the total of one thousand) of the corporate stock of The Greenville News-Piedmont Company. His will dated December 24, 1931, was admitted to probate and the estate was administered by the executors, who have been discharged as such, but have continued to serve as trustees under the terms of the will. They are the widow of the testator, who is the plaintiff Laura Chandler Peace, and his two sons, Roger C. Peace and Charlie Peace. The three of them individually and as trustees brought this action against the other four children of testator and all of the grandchildren, the latter also as representatives of any unborn grandchildren, for the construction of the relevant terms of the will and for confirmation by the court of the written agreement, dated May 11, 1951, by and between the widow and all of the children of the testator, whereby it is proposed to distribute the shares of stock in kind to the widow and children, freed of the trust, and exclude the grandchildren from participation in the distribution and exclude them from further interest in the shares.

The will in relevant part is as follows:

"I will, devise and bequeath all of my shares of stock in the Greenville News-Piedmont Company, or successor corporation or corporations, to my Executors hereinafter named, to be held by them in trust for the following uses and purposes, to wit:

"(a) To collect the dividends and income therefrom and pay the same over in equal shares to my wife, Laura Chandler Peace, and my six children, * * * that is to say,

my wife and each of my said six children shall receive a one-seventh part of said income and dividends.

"(b) Upon the death of my wife, Laura Chandler Peace, the income and dividends from said shares of stock shall be paid by my said Trustees in equal parts to my said six children.

"(c) The child or children of any deceased child of mine shall receive the part his, her or their parent would have received, if living.

"(d) It is my desire that all of my stock in the Greenville News-Piedmont Company, or successor corporation or corporations, shall remain in the sole possession of my family and that no part of said stock shall be sold by my Executors as Trustees until and unless all of it is sold. It is my will, however, that upon the unanimous consent in writing of my Executors, hereinafter named, as Trustees, or their successors, they shall have the full and absolute right and power to sell said shares of stock at any time they may decide to do so.

"(e) In the event my Executors, as Trustees, should sell my shares of stock in the Greenville News-Piedmont Company, or successor corporation or corporations, in accordance with the above provisions, the proceeds therefrom shall be divided into seven equal parts and one part be paid to my wife and one part each to my six children. The child or children of any deceased child of mine shall take the part his, her or their parent would have received if living."

The grandchildren defendants who are of legal age defended by attorney, as did the infant defendants through a regularly appointed guardian *ad litem,* individually and as representatives of the class to which they belong, namely, grandchildren of the testator.

The master, to whom the case was referred, took the testimony which he reported with his well-considered findings of fact and law. He recommended that the trustees be authorized to terminate the trust and distribute the shares as

sought, reasoning that the right which was in them under the terms of the will to sell the stock, which could be done to the beneficiaries, included the right to distribute it in kind in the proportions and under the terms provided by the will for the beneficial interests of the widow and children of the testator, thus terminating the trust as well by distribution of the shares as it could and would be done by sale of the trust *res.* Formal decree followed, which adopted the master's report.

The grandchildren of lawful age and the infant grandchildren, the latter by their guardian *ad litem,* appealed upon exceptions which embrace the contentions that, (1) the children of testator took only life estates, with remainders to their respective children *per stirpes* and (2) that the trustees are without right under the terms of the will to terminate the trust, even upon the express and unanimous agreement of the widow and children of the testator, who include all of the trustees.

The exceptions are without merit. Manifestly, the children of testator were not limited to life estates.

The interests of the grandchildren under the terms of the will were substitutional and contingent. Their respective parents are alive and the grandchildren therefore have no interests in the present distribution or in the shares thereafter. See generally on substitutional gifts, *Jeffords v. Thornal,* 204 S. C. 257, 29 S. E. (2d) 116, and *Power v. Power,* 219 S. C. 56, 64 S. E. (2d) 14.

The other question is also of no difficulty. In the first place, the will prescribed no definite term of the trust.

Furthermore, the trustees were vested by the will with, quoting from it, "the full and absolute right and power to sell said shares of stock at any time they may decide to do so," with further provision for distribution of the proceeds of sale, as set out above. As said by the master, the trustees were thereby expressly empowered to sell the shares to anyone, including the beneficiaries, and distribute the pro-

ceeds; thus they might sell to the beneficiaries and go through the motion of handing the purchase money back to them, by way of distribution. It follows that they may distribute the shares in kind to the beneficiaries in accord with the interests vested in them, respectively, under the terms of the will.

The simplicity of the terms of the trust in this case and the unusually broad powers of the trustees obviate the necessity of consideration of any of the questions which usually arise when trustors, trustees and beneficiaries undertake to terminate trusts prematurely. The subject is treated in 54 Am. Jur., 75 *et seq.*, secs. 70 *et seq.*, Trusts, and in 2 Restatement of the Law of Trusts, 984 *et seq.*, secs. 330 *et seq.* Many relevant decisions are collected in the annotations in 45 A. L. R. 743, 123 A. L. R. 1427 and 163 A. L. R. 852. Tangent cases from this court may be found by reference to 33 West's S. E. Dig., Trusts, 61, 53 *et seq.*

Judgment affirmed.

TAYLOR and OXNER, JJ., and E. H. HENDERSON, A. A. J., concur.

BRAILSFORD, A. A. J., disqualified.